1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CARLOS IVAN REYES QUIROZ,              Case No.  1:23-cv-00235-BAM

12                   Plaintiff,              **ORDER DENYING PLAINTIFF'S**
                                             **MOTION FOR SUMMARY JUDGMENT**
13           v.
                                             **ORDER GRANTING DEFENDANTS'**
14    LYNN Q. FELDMAN, et al.                **MOTION FOR SUMMARY JUDGMENT**

15                   Defendants.             (Docs. 22, 23)

16

17

18          Two motions are pending before the Court in this matter.  On January 10, 2024, Plaintiff

19    Carlos Ivan Reyes Quiroz ("Plaintiff") filed his Motion for Summary Judgment.  (Doc. 22.)

20    Defendants Lynn Q. Feldman, USCIS Fresno Field Office Director; Susan Dibbins, Chief of the

21    AAO; Ur M. Jaddou, USCIS Director; and Alejandro Mayorkas, Secretary of DHS

22    ("Defendants") filed their opposition and Cross-Motion for Summary Judgment on March 15,

23    2024.  (Doc. 23.)[1]  Plaintiff and Defendants subsequently filed their replies.  (Docs. 24-25.)

24          Having carefully considered all of the parties' briefing and the record in this matter, and

25    for the reasons detailed below, Plaintiff's Motion for Summary Judgment (Doc. 22) will be

26    DENIED and Defendants' Cross-Motion for Summary Judgment (Doc. 23) will be GRANTED.

27    _____

28    [1] Documents filed on the CM/ECF docket are referenced throughout this order by their CM/ECF
      docket number and CM/ECF pagination.

                                                   1

1        **I.        BACKGROUND**

2              This case arises out of a dispute concerning United States citizenship.  Plaintiff was born

3    on September 21, 1981 in Sonora, Mexico.  (Doc. 22-1 at 11-12.)  On December 27, 2016,

4    Plaintiff filed a Form N-600 application for certification of citizenship with U.S. Citizenship ("N-

5    600") and Immigration Services ("USCIS") pursuant to Section 341 of the Immigration and

6    Nationality Act ("INA").  (Doc. 22-1 at 12, Doc. 23 at 4.)  Plaintiff's application was denied on

7    January 24, 2018 by Defendant Lynn Quan Feldman, USCIS Field Office Director.  (Doc. 1-3.)

8    In the denial, Defendant Feldman determined that there was insufficient evidence that Plaintiff's

9    Great Great Grandmother Josefa Valenzuela De Parra was a citizen and that Plaintiff's mother

10   Irasema Quiroz Bastamente had acquired citizenship.  (*Id.*)  On April 5, 2021, Defendant

11   Feldman issued another decision following Plaintiff's request to reopen or reconsider the matter,

12   again denying Plaintiff's application as Plaintiff had not established that Plaintiff's mother was a

13   U.S. citizen or could acquire U.S. citizenship through her parents.  (Doc. 1-2.)  On May 10, 2022,

14   the Administrative Appeals Office dismissed Plaintiff's appeal, as Plaintiff had not demonstrated

15   that his mother was a U.S. citizen through whom he acquired U.S. citizenship.  (Doc. 1-1.)

16             On February 16, 2023, Plaintiff filed his complaint against Defendants, seeking

17   declaratory and injunctive relief and requesting the Court: render a declaratory judgment that

18   Plaintiff is a U.S. citizen, set aside Defendants' denial of Plaintiff's application for certificate of

19   citizenship, order Defendants to accept Plaintiff's claim to U.S. citizenship, and grant reasonable

20   attorneys' fees and costs.  (Doc. 1.)  The parties consented to magistrate jurisdiction, and the case

21   was reassigned to the undersigned for all purposes.  (Doc. 9.)  The parties stipulated to

22   supplementing of the Certified Administrative Record, and the Court ordered that the Certified

23   Administrative Record be filed on or before September 26, 2023, supplemented no later than

24   November 10, 2023, and that any objections to any supplement be filed on or before November

25   24, 2023.  (Docs. 19, 20.)  The Certified Administrative Record was filed on September 27, 2023,

26   and no supplements or objections were subsequently made.  (*See* Doc. 21.)

27             On January 10, 2024, Plaintiff filed his Motion for Summary Judgment.  (Doc. 22.)

28   Defendants filed their opposition and Cross-Motion for Summary Judgment on March 15, 2024.

1  (Doc. 23.)  Plaintiff and Defendants subsequently filed their replies.  (Docs. 24-25.)

2  **II.      LEGAL STANDARD FOR SUMMARY JUDGMENT**

3       Summary judgment is appropriate when the pleadings, disclosure materials, discovery,

4  and any affidavits provided establish that "there is no genuine dispute as to any material fact and

5  the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is

6  one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty*

7  *Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a

8  reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*  Summary judgment

9  must be entered, "after adequate time for discovery and upon motion, against a party who fails to

10  make a showing sufficient to establish the existence of an element essential to that party's case,

11  and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S.

12  317, 322 (1986).

13       Where, as here, the parties cross-move for summary judgment on a claim, the court is

14  required to review the evidence submitted by the parties in support of their own motions and in

15  opposition to the opposing party's motion in deciding each summary judgment motion.  *Fair*

16  *Hous. Council of Riverside Cty., Inc., v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001)

17  (finding district court was required to review the evidence properly submitted in support of

18  plaintiffs' motion for summary judgment to determine whether it presented a disputed issue of

19  material fact precluding summary judgment on defendants' motion for summary judgment);

20  *Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011) (stating court considers each party's

21  evidence on cross motions to evaluate whether summary judgment was appropriate).

22       In resolving a summary judgment motion, "the court does not make credibility

23  determinations or weigh conflicting evidence." *Soremekun,* 509 F.3d at 984.  Instead, "[t]he

24  evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn

25  in [its] favor." *Anderson,* 477 U.S. at 255.  Inferences, however, are not drawn out of the air; the

26  nonmoving party must produce a factual predicate from which the inference may reasonably be

27  drawn.  *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985),

28  aff'd, 810 F.2d 898 (9th Cir. 1987).

1      **III.  CROSS-MOTIONS FOR SUMMARY JUDGMENT**

2          In his motion for summary judgment, Plaintiff argues that he has shown by a

3  preponderance of the evidence that he acquired U.S. citizenship at birth and further argues that

4  Defendants' denial of Plaintiff's U.S. citizenship violates the Administrative Procedures Act

5  ("APA").  (Doc. 22-1.)  Defendant in turn argues that Plaintiff has not met his burden to show he

6  acquired U.S. citizenship at birth and Plaintiff's APA claim is precluded as there is an alternate

7  adequate remedy.  (Doc. 23.)

8         **A. Plaintiff's APA Claim**

9          As an initial matter, Plaintiff challenges Defendants' actions as arbitrary and capricious

10  under the APA.  (Doc. 22-1 at 28-29.)  Defendants in turn argue that Plaintiff's APA claim is

11  precluded because 8 U.S.C. § 1503 provides an adequate remedy to achieve Plaintiff's desired

12  relief.  (Doc. 23 at 15-16.)

13          The APA permits judicial review of final agency actions "made reviewable by statute" or

14  "for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  However, the district

15  court cannot "grant relief if any other statute that grants consent to suit expressly or impliedly

16  forbids the relief which is sought."  5 U.S.C. § 702; *see Bowen v. Massachusetts*, 487 U.S. 879,

17  903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing

18  procedures for review of agency action.").  Courts in this circuit have found that APA claims are

19  precluded by 8 U.S.C. § 1503 as it provides an adequate remedy.  *See Regalado v. Blinken*, No.

20  2:22-cv-2104-DB, 2023 WL 4187497, at *4 (E.D. Cal. June 26, 2023) (granting dismissal of

21  APA claim as the relief requested "is exactly the relief provided for by 8 U.S.C. § 1503.")

22  (citation omitted); *Moncada v. Pompeo*, No. 2:19-cv-1293 AB AGRx, 2020 WL 1079301, at *3

23  (C.D. Cal. Feb. 3, 2020) ("Plaintiff alleges that the revocation of his passport by the U.S.

24  Department of State constituted arbitrary or capricious government action that is prohibited by the

25  APA. However, as Defendant correctly argues, 8 U.S.C. § 1503(a) provides an adequate remedy

26  in court."); *Dvash-Banks v. Pompeo*, No. CV 18-523-JFW (JCx), 2019 WL 911799, at *5 (C.D.

27  Cal. Feb. 21, 2019) ("Where an applicant challenges the State Department's denial of a right or

28  privilege of U.S. citizenship on the basis that the plaintiff is not a U.S. citizen, courts have

1    consistently concluded that Section 1503(a) offers an adequate alternative remedy to APA

2    review.").

3            As Plaintiff's APA challenge arose from denial of his N-600 application, the APA review

4    requested would be duplicative of review under the appropriate statute, 8 U.S.C. § 1503, which

5    provides an adequate remedy.  Plaintiff's APA challenge is therefore precluded.  Accordingly,

6    Defendants' motion for summary judgment on Plaintiff's APA claim is GRANTED and

7    Plaintiff's motion for summary judgment as to his APA claim is DENIED.

8            **B.  Plaintiff's Citizenship Certification Claim**

9            Plaintiff challenges the denial of his N-600 application pursuant to 8 U.S.C. §1503(a) and

10   8 U.S.C. §1409(c), arguing that he has shown by a preponderance of the evidence that he

11   acquired U.S. citizenship at birth as each prior generation in Plaintiff's family tree appropriately

12   derived and transmitted U.S. citizenship.  (Doc. 22-1 at 14-28, Doc. 24 at 4-15.)  Defendant in

13   turn contends that Plaintiff's N-600 application was appropriately denied as Plaintiff has not

14   shown that he acquired U.S. citizenship given multiple instances where prior generations had not

15   acquired U.S. citizenship.  (Doc. 23 at 7-15, Doc. 25 at 4-11.)

16           "If any person who is within the United States claims a right or privilege as a national of

17   the United States and is denied such right or privilege by any department or independent agency,

18   or official thereof, upon the ground that he is not a national of the United States, such person may

19   institute an action… against the head of such department or independent agency for a judgment

20   declaring him to be a national of the United States."  8 U.S.C. § 1503(a).  "A suit under section

21   1503(a) is not one for judicial review of the agency's action. Rather, section 1503(a) authorizes a

22   *de novo* judicial determination of the status of the plaintiff as a United States national."  *Richards*

23   *v. Sec'y of State, Dep't of State*, 752 F.2d 1413, 1417 (9th Cir. 1985).

24           The parties agree that the statute applicable to Plaintiff is 8 U.S.C. § 1409(c), which

25   governs citizenship of children born outside of the United States between December 23, 1952 and

26   June 12, 2017, and out of wedlock to a U.S. citizen mother and non-U.S. citizen father.  (Doc. 22-

27   1 at 9-10, Doc. 23 at 6.)  This statute provides that a "person born, after December 23, 1952,

28   outside the United States and out of wedlock shall be held to have acquired at birth the nationality

5

1   status of his mother, if the mother had the nationality of the United States at the time of such

2   person's birth, and if the mother had previously been physically present in the United States or

3   one of its outlying possessions for a continuous period of one year." 8 U.S.C. § 1409(c). As the

4   parties also agree, in "an action under 8 U.S.C. § 1503(a), the plaintiff bears the burden to

5   establish United States citizenship by a preponderance of the evidence." *Luque v. Blinken*, No.

6   CV-19-00330-TUC-JGZ LAB, 2021 WL 2328044, at *6 (D. Ariz. June 8, 2021), *aff'd*, No. 21-

7   16012, 2022 WL 17592190 (9th Cir. Dec. 13, 2022); *Young Ah Chor v. Dulles*, 270 F.2d 338,

8   340-41 (9th Cir. 1959) ("The law is well settled that a person who seeks a judicial declaration of

9   his citizenship under the Nationality Act of 1940 must establish his American citizenship by a fair

10  preponderance of the evidence.")

11        Here, Plaintiff argues that his mother, Irasema Quiroz Bustamante, had obtained U.S.

12  citizenship and had been present within the United States for a period of one year prior to his

13  birth. (Doc. 22-1 at 15, 23-27; Doc. 24 at 4-9.) Defendant responds that Plaintiff has not shown

14  that Irasema Quiroz Bustamante was in fact his mother, that Irasema had acquired U.S.

15  citizenship from her parents, or that Irasema satisfied the physical presence requirement to

16  transmit U.S. citizenship to Plaintiff. (Doc. 23 at 5-9; Doc. 25 at 3-9.) The Court first addresses

17  the one-year physical presence element as to Plaintiff's claimed mother, Irasema Quiroz

18  Bustamante.[2]

19        To satisfy the physical presence requirement, Plaintiff argues that from September 1976 to

20  June 1978, "Irasema Quiroz Bustmanate [sic] resided in the United States, with family, while

21  attending public school in the State of Arizona, thereby satisfying the requirement that she resided

22  in the United States continuously for 12 months prior to the Plaintiff's birth, in order to transmit

23  U.S. citizenship, pursuant to INA § 309(c)." (Doc. 22-1 at 15, 26.) In his motion for summary

24  judgment, Plaintiff solely points to school records to establish Irasema's physical presence in the

25  United States, while in his reply, Plaintiff points to a 1997 presentencing report for Irasema

26

27  _____

   [2] Throughout the briefing and record, Irasema Quiroz Bustamante's name is spelled many ways.
   For ease of reference, the Court refers to Plaintiff's claimed mother as Irasema Quiroz
28  Bustamante.

1    Quiroz Bustamante.

2            Examining those records, the Arizona Public School Register for Gila Vista Jr. High

3    School for the School Year 1977 to 1978 notes that the school year ran from September 1, 1977

4    to June 2, 1978.  (Doc. 21-6 at 88.)  In the register, there is a pupil listed as "Quiroz, Irasema"

5    with a parent or guardian named "Pedro Quiroz" and address of "2667 Beverly Lane."  (Doc. 21-

6    6 at 90.)  Per the register, Irasema Quiroz attended with multiple absences through the school year

7    due to illness.  (Doc. 21-6 at 90-100, Doc. 26-7 at 1-11.)  Records from the Yuma Union High

8    School District indicate "Quiroz-Bustamante Iracema" entering the school district from Gila Vista

9    on August 31, 1978 and a transcript for Kofa High School lists Irasema Quiroz's grades for Grade

10   9 as of December 1978, grades for Grade 9 as of May 1979 and grades for Grade 10 as of

11   December 1979 with the parent listed as "Pedro Quiroz 2667 Beverly Ln Yuma, AZ 85364."

12   (Doc. 21-7 at 13-14.)

13           However, these records do not establish Irasema Quiroz Bustamante's continuous physical

14   presence in the United States.  The 1977-78 school year record states that the year ran from

15   September 1, 1977 to June 2, 1978, while the 1978-79 school year only notes that Irasema Quiroz

16   Bustamante entered the school district on August 31, 1978.  The months of June through August

17   1978 are therefore unaccounted for by these records.  Additionally, the 1977-78 school year

18   records note breaks including Labor Day, Christmas Vacation, Washington's Birthday, Spring

19   Vacation, Memorial Day, and do not account for Irasema Quiroz Bustamante's location during

20   that time.  (Doc. 21-6 at 90-100, Doc. 21-7 at 1-11.)  The 1978-79 school year records only state

21   an entry date of August 31, 1978 and, while it includes grades for Grades 9 and 10, does not

22   clarify attendance at the Arizona high school.  (Doc. 21-7 at 13-14.)  Given the gaps in this

23   record, the school records do not allow the Court to conclude, by a preponderance of the

24   evidence, that Irasema Quiroz Bustamante was "physically present in the United States or one of

25   its outlying possessions for a continuous period of one year."  8 U.S.C. § 1409.

26           In his reply, Plaintiff argues that further evidence demonstrates Irasema Quiroz

27   Bustamante satisfied the physical presence requirement.  Plaintiff points to a January 1999

28   presentencing report which indicates that Irasema's "mother died when she… was five years old,

1    and she remained with her father on the family ranch" and that Irasema "reported living in the

2    United States off and on, beginning at age thirteen, and permanently immigrated to the United

3    States when she was sixteen." (Doc. 21-14 at 47, Doc. 24 at 8.)  Defendant counters that Irasema

4    Quiroz Bustamante's immigration records instead establish that she did not immigrate or become

5    a lawful permanent resident of the United States until 1983 and Plaintiff's birth in Mexico in

6    1981 suggests that she was living in Mexico at the time.  (Doc. 25 at 6.)

7         The January 4, 1999 presentencing report also does not allow the Court to conclude by a

8    preponderance of the evidence that Irasema Quiroz Bustamante was physically present in the

9    United States for at least one year prior to Plaintiff's birth on September 21, 1981.  She reported

10   that she lived in the United States "off and on, beginning at age thirteen," which does not prove a

11   continuous physical presence in the United States.  (Doc. 21-14 at 47.)  Additionally, though she

12   reported permanently immigrating to the United States at sixteen and receiving a resident alien

13   card at eighteen, other evidence in the record conflicts with that account.  An "Immigrant Visa

14   and Alien Registration" form has an issuance date of January 25, 1983.  (*See* Doc. 21-14 at 150.)

15   While this form includes a checked box representing that "the immigrant has been previously in

16   the United States," it does not provide further detail about previous residence.  (*Id.*)  A "Petition

17   to Classify Status of Alien Relative for Issuance of Immigrant Visa" form for Irasema Quiroz-

18   Bustamante completed by her father, Pedro Quiroz-Parra, notes a fee paid on March 29, 1982 and

19   a box checked for "no" in response to the question "Has this beneficiary ever been in the U.S.?"

20   (*Id.* at 157.)  This form lists an address for Irasema Quiroz-Bustamante in Sonora, Mexico and a

21   crossed-out address in the United States.  (*Id.* at 158.)[3]  Given the immigration documents in the

22   record postdate Plaintiff's 1981 birth and conflict with Irasema's reporting in the presentencing

23   report, Plaintiff's self-reporting in the presentencing support is not determinative.

24        The lack of more complete documentation of Irasema Quiroz Bustamante's physical

25   _____

26   [3] Plaintiff attempts to undermine the 1982 petition's evidentiary weight in establishing that
     Irasema Quiroz Bustamante was Plaintiff's mother, as the petition was completed by Irasema
27   Quiroz Bustamante's father rather than herself.  (Doc. 24 at 5.)  However, Plaintiff does not
     address the petition's probative value in determining if Irasema Quiroz Bustamante was present in
28   the United States during the requisite time period.

presence prior to Plaintiff's birth also fails to counter other evidence in the record suggesting that Irasema Quiroz Bustamante lived in Mexico during the period at issue.  The affidavit of Imelda Quiroz Bustamante states that she is the sister of Irasema Quiroz Bustamante and that "While growing up, [she] lived with [her] parents and siblings in San Luis Rio Colorado, Sonora, Mexico on Avenue Guadalupe Victoria and Eighth Street" and that she "lived there until [she] came to the United States as an adult."  (Doc. 21-9 at 100.)  She also stated that when she and her siblings "grew older, [their] grandfather visited [them] in Mexico two or three times."  (*Id.*)  Plaintiff does not address or dispute this affidavit.  (*See* Docs. 22-1, 24.)  Given the affidavit of Irasema Quiroz Bustamante's older sister Imelda stating that she and her siblings lived together in Mexico until Imelda came to the United States as an adult, the Court cannot conclude that Irasema Quiroz Bustamante was physically present for a continuous period of one year prior to Plaintiff's birth.  As Plaintiff's cited evidence leaves gaps in Plaintiff's claimed timeline and is disputed by other evidence in the record, Plaintiff has not shown by a preponderance of the evidence that Irasema Quiroz Bustamante had a continuous physical presence in the United States prior to his September 21, 1981 birth.

Plaintiff argues that § 1409(c) only requires that a parent be physically present "without any significant interruptions" for an entire year preceding the individual's birth.  (Doc. 24 at 7-9.)  Defendants respond that continuous, uninterrupted presence is required.  (Doc. 25 at 6-8.)  Following briefing, Defendants also filed a notice of supplemental authority stating that the Ninth Circuit recently issued an opinion in *Meza-Carmona v. Garland* that precluded Plaintiff's argument that minor interruption in the physical presence may be permitted.  (Doc. 26.)

Despite Plaintiff's argument, courts in this circuit have found that interruptions are not permitted for the continuous physical presence requirement of Section 1409(c).  *See Luque*, 2021 WL 2328044 at *8 ("In light of the plain language in section 1409(c), the absence of moderating language, and the Supreme Court's interpretation of a similar 'continuous physical presence' requirement, the Court presumes that Congress acted intentionally when it required a continuous physical presence in section 1409(c) and that a continuous physical presence means just that."); *Luque v. Blinken,* No. 21-16012, 2022 WL 17592190 at *1 (9th Cir. Dec. 13, 2022) ("The plain

1    meaning here is unambiguous: the mother must have been continuously physically present. To

2    read the statute as allowing interruptions during the one-year period renders the word

3    'continuous' meaningless.").

4         Indeed, in *Meza-Carmona*, the Ninth Circuit further clarified this issue and held that "§

5    1409(c) requires a person claiming citizenship to show that the person's mother stayed in the

6    United States for one year without leaving the country." *Meza-Carmona v. Garland*, 113 F.4th

7    1163, 1167 (9th Cir. 2024). "Continuous" means "the person's mother stayed in the United

8    States, without leaving, throughout that period." *Id.* at 1166. In *Meza-Carmona*, the appellant

9    argued that his mother, who was born in the United States resided in Mexico for many years, had

10   transmitted citizenship to him. *Id.* at 1165. The district court found that plaintiff failed to prove

11   that he was a citizen based on his mother's "continuous" presence in the United States. On

12   appeal, the Ninth Circuit court noted that the mother "was in Los Angeles, California on August

13   21, 1947 (the date she was born), and in El Paso, Texas on July 11, 1948 (the date she was

14   baptized); at some time after her baptism, [the parent] moved in with [her godmother] and lived

15   with her in El Paso for about two years; and, during this period of time, [the godmother] regularly

16   renewed border crossing cards that allowed her to reenter the United States from Mexico." *Id.* at

17   1167-68. The Ninth Circuit found that there "was no other evidence of whether [the mother]

18   traveled to Mexico at a time that would have interrupted her one year of continuous presence in

19   the United States," and found that "the district court could draw either of two inferences: (1) [the

20   mother] continuously stayed in the United States for at least one year at some point between her

21   birth, baptism, and the two years she resided with [her godmother]; or (2) [the mother] did not

22   continuously stay in the United States for at least one year because she interrupted that period

23   with one or more visits to Mexico with her parents or [her godmother]." *Id.* at 1168. The Ninth

24   Circuit therefore could not find clear error and that because "the district court's findings are

25   plausible in light of the entire record, we may not reverse, even if we would have weighed the

26   evidence differently." *Id.* (citing *Lewis v. Ayers*, 681 F.3d 992, 998 (9th Cir. 2012)). Given the

27   Ninth Circuit's clarification of the requirements of Section 1409(c), Plaintiff's argument for a less

28   stringent interpretation of the physical presence requirement is unavailing.

1       Moreover, the case cited by Plaintiff is inapposite.  Plaintiff cites *Rosenberg v. Fleuti* for

2   the proposition that brief excursions do not interrupt continuous physical presence for the purpose

3   of Section 1409(c).  However, in that case, the Supreme Court actually held that "an alien having

4   a lawful permanent residence in United States shall not be regarded as making 'entry' into the

5   United States for purposes of immigration laws if his departure to foreign place was not intended

6   or reasonably to be expected by him should be read to protect resident aliens who are only briefly

7   absent from United States, and that an innocent, casual, and brief excursion by a resident alien

8   outside the borders of the United States does not disrupt his resident alien status."  *Rosenberg v.*

9   *Fleuti*, 374 U.S. 449 (1963).  Rather than clarifying Section 1409(c) and whether a citizen may

10  transmit citizenship, *Rosenberg v. Fleuti* examined a different statute and entry limitations on

11  resident aliens.  Plaintiff's argument that the Court should follow the guidance of *Rosenberg v.*

12  *Fleuti* rather than *Luque* and *Meza-Carmona* is therefore unsuccessful.

13      Plaintiff further argues that in their final decision, Defendants conceded that there was

14  sufficient evidence of Irasema Quiroz Bustamante's continuous physical presence in the United

15  States prior to Plaintiff's birth.  (Doc. 21-2 at 16, Doc. 22-1 at 26, Doc. 24 at 8.)  Defendant

16  responds that, as the review is *de novo*, Plaintiff cannot rely on prior findings or concessions at

17  the administrative level.  (Doc. 25 at 3.)

18      In his brief, Plaintiff acknowledges that the Court reviews the decision *de novo*.  (Doc. 22-

19  1 at 7-8.)  Additionally, district courts have rejected the argument that their review is bound by

20  agency reasoning.  *See Camara v. Chertoff*, No. C-06-7552 EMC, 2008 WL 80933, at *5 (N.D.

21  Cal. Jan. 7, 2008) (rejecting argument that a court could only "uphold agency action on the basis

22  articulated by the agency itself," as the "de novo language in § 1427(c) suggests that judicial

23  review for the denial of a naturalization applications not subject to this particular administrative

24  law constraint, notwithstanding the fact that the statute states that a party may seek review of a

25  denial of a naturalization application in accordance with the Administrative Procedure Act…")

26  This Court's review therefore is not bound by the finding that Irasema Quiroz Bustamante had

27  previously been physically present in the United States for a continuous period of at least one

28  year, and Plaintiff's argument that Defendants have essentially waived this issue is incorrect.

In sum, Plaintiff has failed to show by a preponderance of the evidence that his claimed mother Irasema Quiroz Bustamante had been physically present in the U.S. for at least one year prior to his birth on September 21, 1981.  Plaintiff has therefore not satisfied the key physical presence element for transmission of citizenship under the relevant statute.  8 U.S.C. § 1409.  As Plaintiff failed to demonstrate a necessary element for transmission of citizenship to Plaintiff, the Court need not reach Plaintiff's remaining arguments regarding his family tree.

Accordingly, Defendants' motion for summary judgment on Plaintiff's certification of citizenship claim is GRANTED and Plaintiff's motion for summary judgment as to his certification of citizenship claim is DENIED.

## IV.   CONCLUSION AND ORDER

For the reasons stated, Plaintiff's Motion for Summary Judgment (Doc. 22) is DENIED and Defendants' Cross-Motion for Summary Judgment (Doc. 23) is GRANTED.  The Clerk of Court is directed to enter judgment in favor of Defendants Lynn Q. Feldman, USCIS Fresno Field Office Director; Susan Dibbins, Chief of the AAO; Ur M. Jaddou, USCIS Director; and Alejandro Mayorkas, Secretary of DHS, and against Plaintiff Carlos Ivan Reyes Quiroz.

IT IS SO ORDERED.

Dated:   __March 27, 2025__                    ___/s/ Barbara A. McAuliffe___
                                              UNITED STATES MAGISTRATE JUDGE